**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOEL DAVILA CALIXTO,<br>    c/o Public Citizen<br>    1600 20th Street NW<br>    Washington, DC 20009, | Civil Action No. 19-1853 |
| HECTOR HERNANDEZ GOMEZ,<br>    c/o Public Citizen<br>    1600 20th Street NW<br>    Washington, DC 20009, | |
| LEONARDO AVILES ROMERO,<br>    c/o Public Citizen<br>    1600 20th Street NW<br>    Washington, DC 20009, | |
| HILARIO OLVERA GUTIERREZ,<br>    c/o Public Citizen<br>    1600 20th Street NW<br>    Washington, DC 20009, | |
| and | |
| JORGE PALAFOX JUAREZ,<br>    c/o Public Citizen<br>    1600 20th Street NW<br>    Washington, DC 20009, | |
|                 Plaintiffs,<br>v. | |
| R. ALEXANDER ACOSTA, in his official<br>capacity as United States Secretary of Labor,<br>    200 Constitution Avenue NW<br>    Washington, DC 20210, | |
| and | |
| U.S. DEPARTMENT OF LABOR,<br>    200 Constitution Avenue NW<br>    Washington, DC 20210, | |
|                 Defendants. | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.　Plaintiffs are five workers who worked pursuant to H-2B nonimmigrant visas in 2013. Pursuant to a court order and a federal regulation, the Office of Foreign Labor Certification (OFLC) of the Department of Labor (DOL) determined nearly six years ago that each of plaintiffs' employers were legally obligated to pay them a higher wage rate for that 2013 work than DOL had previously indicated. DOL issued notices to that effect, known as "supplemental prevailing wage determinations" or "SPWDs." In 2014, the Secretary of Labor issued a notice in the Federal Register affirming that the adjustment of wages as set forth in these SPWDs was appropriate. Nonetheless, nearly six years later, the revised wage determinations have not taken effect and remain in administrative limbo. DOL's failure to give effect to the revised wage determinations, or take *any* action with respect to them since December 2014, is unlawful and reflects arbitrary and capricious agency action. As a result, plaintiffs remain deprived of wages to which they are legally entitled.

## JURISDICTION AND VENUE

2.　This Court has jurisdiction under 28 U.S.C. § 1331.

3.　Venue is proper under 28 U.S.C. § 1391(e) and 5 U.S.C. § 703.

## PARTIES

4.　Plaintiff Joel Davila Calixto is a Mexican national who regularly works in the United States in seasonal employment as part of the H-2B program. In 2013, he worked for a company known as St. Louis Select Landscaping and Lawn Care as a driver and landscaper, pursuant to an H-2B visa, at various worksites in Missouri and Illinois, including St. Charles and St. Louis Counties in Missouri.  He was paid $10.25 per hour, regardless of location.

5. Plaintiff Hector Hernandez Gomez is a Mexican national who regularly works in the United States in seasonal employment as part of the H-2B program. In 2013, he worked for St. Louis Select Landscaping and Lawn Care as a landscaper, pursuant to an H-2B visa, in and around St. Louis County in Missouri. He was paid approximately $10-11 per hour.

6. Plaintiff Leonardo Aviles Romero is a Mexican national who has frequently worked in the United States in seasonal employment as part of the H-2B program. In 2013, he worked for a company known as Outside Unlimited doing landscaping work, pursuant to an H-2B visa, at various worksites in Baltimore, Frederick, and Carroll Counties in Maryland, as well as in parts of Pennsylvania. He was paid approximately $11 per hour.

7. Plaintiff Hilario Olvera Gutierrez is a Mexican national who has frequently worked in the United States in seasonal employment as part of the H-2B program. In 2013, he worked for Outside Unlimited performing landscaping work, pursuant to an H-2B visa, at various worksites in Virginia, Maryland, and Pennsylvania. He was paid $9.54 per hour.

8. Plaintiff Jorge Palafox Juarez is a Mexican national who worked in the United States in seasonal employment as part of the H-2B program in 2013. Pursuant to an H-2B visa, he worked for JLQ Concessions performing food preparation tasks in traveling fairs throughout California, including in San Mateo, Alameda, Sonoma, Los Angeles, and Monterey counties. He was paid a flat rate of $40 per day during fair preparation days and $85 per day during fair operations. He frequently worked more than eight hours per day.

9. Defendant R. Alexander Acosta is the Secretary of Labor and charged with the supervision and management of all decisions and actions within DOL. Plaintiffs sue Secretary Acosta in his official capacity.

10. Defendant DOL is an agency of the United States within the meaning of the Administrative Procedure Act (APA). DOL is responsible for issuing labor certifications in connection with employer petitions for authorization to employ H-2B workers, 8 C.F.R. §§ 214.2(h)(1)(ii)(D), (6)(iii), and enforcing compliance with labor-related conditions of the H-2B program, including the payment of lawfully compliant wages, 8 C.F.R. § 214.2(h)(6)(ix); 29 CFR pt. 503.

## FACTS

11. Congress has established a visa program that allows employers to hire foreign workers to perform temporary non-agricultural labor when there are too few available, willing, and qualified U.S. workers to fill open jobs. This program is referred to as the H-2B program, taking its name from one of the relevant provisions of the Immigration and Nationality Act (INA), 8 U.S.C. § 1101(a)(15)(H)(ii)(b).

12. To hire H-2B workers, an employer must obtain a temporary labor certification from the Secretary of Labor. *See* 29 C.F.R. § 503.1(a). As part of the application process for such a certification, the employer must agree that, at all times, it will pay both H-2B workers and any workers in corresponding employment a wage that "equals or exceeds the highest of the prevailing wage or Federal minimum wage, State minimum wage, or local minimum wage." 29 C.F.R. § 503.16(a)(1).

13. By regulation, DOL has adopted various methodologies for calculating the "prevailing wage."

14. In 2010, a federal district court decision held that regulations promulgated in 2008, which prescribed a methodology that would result in a lower prevailing wage, were invalid under the APA. *Comite de Apoyo a los Trabajadores Agricolas v. Solis*, Civ. No. 09-240, 2010 WL

3431761 (E.D. Pa. Aug. 30, 2010) (*CATA I*).  The *CATA I* court did not vacate the 2008 rule, but it directed DOL to promulgate new rules concerning the calculation of the prevailing wage rate. *Id.* at *24-28.

15. When years later DOL was continuing to use the invalid 2008 rule, a district court vacated that rule and held that all labor certifications issued under that rule violated the APA. *See Comite de Apoyo a los Trabajadores Agricolas v. Solis*, 933 F. Supp. 2d 700, 707-09, 711, 714-15 (E.D. Pa. 2013) (*CATA III*). This decision applied to the labor certifications initially issued to each of plaintiffs' employers for their 2013 work.

16. The following month, DOL and the Department of Homeland Security jointly issued an Interim Final Rule revising the methodology that determines the H-2B prevailing wage in a manner that would increase the prevailing wage. *See* Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program, Part 2, 78 Fed. Reg. 24,046 (Apr. 24, 2013) (2013 Rule).

17. In the 2013 Rule, the agencies explained that the new methodology would be effective immediately with respect to new or pending applications for labor certifications. The 2013 Rule further stated that "[u]pon individual notification to the employer of a new prevailing wage, the new wage methodology will also apply to all previously granted H-2B temporary labor certifications for any work performed on or after the effective date of this interim rule." *Id*. at 24,055.

18. The 2013 Rule stated that, under the court order invalidating the 2008 Rule and based on DOL's own factual findings,

> the U.S. workers and H-2B workers currently employed under approved certifications, based on the invalid wage rates under the 2008 rule, are being underpaid in violation of the INA. To come into compliance with the court's order and to ensure that DHS and DOL fulfill the statutory mandate to protect the domestic

> labor market, DHS and DOL must immediately set new and legally valid prevailing wage rate standards to allow for an immediate adjustment of the wage rates for these currently employed workers. Further delay in setting a legally valid prevailing wage regime will cause continued harm to U.S. workers, foreign workers, and the domestic labor market.

*Id*. at 24,056.

19. In accordance with the 2013 Rule, OFLC then sent individual notifications to employers who had previously obtained certifications for ongoing H-2B employment (the 2013 SPWDs). The notifications informed those employers that the prevailing wage had increased, identified the increased wage, and explained that compensation at the higher wage rate was required, pointing to provisions in the H-2B application. OFLC issued the last of these SPWDs on August 12, 2013.

20. OFLC issued an SPWD to St. Louis Select Landscaping and Lawn Care, Joel Davila Calixto and Hector Hernandez Gomez's 2013 employer, on July 3, 2013. It specified a prevailing wage for landscape laborers in St. Louis and St. Charles Counties in Missouri of $12.15 per hour. This rate exceeds the rate St. Louis Select Landscaping and Lawn Care paid Davila Calixto and Hernandez Gomez for such work on and after April 24, 2013.

21. OFLC issued two SPWDs to Outside Unlimited, Leonardo Aviles Romero's and Hilario Olvera Gutierrez's 2013 employer. First, on July 9, 2013, OFLC issued an SPWD specifying prevailing wage rates for work for landscape laborers in Pennsylvania; for the areas where Aviles Romero and Olvera Gutierrez worked, the rate was $14.04 per hour. Second, on July 16, 2013, OFLC issued an SPWD specifying prevailing wage rates for landscape laborers in Maryland and the District of Columbia; for the areas where Aviles Romero and Olvera Gutierrez worked, the rates were $12.41 per hour in Baltimore and Carroll Counties and $12.51 per hour in Frederick County. These rates exceed the rate that Outside Unlimited paid Aviles Romero and Olvera Gutierrez for such work on and after April 24, 2013.

22. On June 27, 2013, OFLC issued an SPWD to JLQ Concessions, Jorge Palafox Juarez's 2013 employer. OFLC specified a prevailing wage for amusement and recreation attendants of $10.08 per hour in Monterey County, $10.10 per hour in Sonoma County, $10.21 per hour in Los Angeles County, $10.62 per hour in Alameda County, and $11.62 per hour in San Mateo County. These rates exceed the rate that JLQ Concessions paid Palafox Juarez for such work on and after April 24, 2013.

23. The SPWDs stated that employers could seek a "redetermination" of the revised wage that they set out pursuant to a longstanding provision of DOL regulations, which allowed employers to submit supplemental information "[i]f the employer disagrees with the wage level assigned to its job opportunity, or if the NPC informs the employer its survey is not acceptable, or if there is another legitimate basis for such a review." 20 C.F.R. § 655.10(g)(1) (2013).

24. Under the regulations in effect at the time, any requests for redetermination were to be filed with OFLC. If OFLC "d[id] not accept the employer's survey after considering the supplemental information, or affirm[ed] its determination concerning the skill level," the employer could appeal by seeking administrative review from DOL's Board of Alien Labor Certification Appeals (BALCA). 20 C.F.R. 655.10(g)(2)-(3) (2013); 20 C.F.R. § 655.11 (2013); 20 C.F.R. § 655.61 (2013). The Secretary has taken the position that he has the authority to reverse any decision by BALCA. *See, e.g.*, *Gonzalez-Avilez v. Perez*, Civ. No. JFM-15-3463, 2016 WL 3440581 (D. Md. June 17, 2016).

25. Thousands of employers filed requests for "redeterminations," which were submitted to BALCA for administrative review. Many of the requests argued that OFLC lacked any authority to recalculate the prevailing wage after it issued an initial certification and, thus, that the SPWDs were improper.

26. Each of plaintiffs' employers identified above sought administrative review of the SPWDs issued to them.

27. None of plaintiffs' employers identified above has paid plaintiffs back wages to account for the difference between the SPWD wage rate and the wage they actually paid in 2013.

28. DOL has taken the position that the rate contained in the SPWDs "does not go into effect during the time the determination is under review" by BALCA. *See* Aug. 28, 2013 Declaration of OFLC Administrator William L. Carlson, *CATA v. DOL* (E.D. Pa. Civ. No. 09-00240-LDD). If the SPWD is upheld on administrative appeal, though, the appealing employer is "required to pay the wage rate in the SPWD for all work performed on and after the date of the SPWD." *Id.*

29. In a challenge brought by another employer that had received SPWDs, Island Holdings, LLC, BALCA issued a decision instructing OFLC to vacate the SPWDs issued to that employer. *See Island Holdings LLC*, 2013-PWD-00002 (BALCA Dec. 3, 2013). BALCA concluded that DOL lacked the authority to issue the SPWDs. *Id.*

30. A group of H-2B workers then filed another lawsuit in the Eastern District of Pennsylvania challenging BALCA's *Island Holdings* decision. *See Comite de Apoyo a Los Trabajadores Agricolas v. Perez*, ("*CATA IV*").

31. On December 20, 2013, while *CATA IV* was pending, DOL announced on the OFLC webpage that it had "decided to postpone action on the *Island Holdings* decision pending judicial review, as permitted by the Administrative Procedure Act, 5 U.S.C. § 705." *See* DOL, "Island Holdings," https://www.foreignlaborcert.doleta.gov/archives.cfm (Dec. 20, 2013). This announcement applied to the SPWDs at issue in *Island Holdings* itself, as well as the other SPWDs

that OFLC had issued, including those challenged by plaintiffs' employers that remained before BALCA on administrative review. *Id.*

32. In 2014, the district court presiding over *CATA IV* dismissed the case, finding that the plaintiffs lacked standing because DOL had not indicated that it would defend or enforce BALCA's decision, and that *Island Holdings* did not represent a final agency action because it is "the Secretary of Labor, and not BALCA, that ultimately makes the policies and rules governing H-2B prevailing wages." 46 F. Supp. 3d 550, 561, 562 (E.D. Pa. 2014). The court further concluded that the case was not ripe in light of a potential new rulemaking in 2014–2015. *Id.* at 563–64.

33. After *CATA IV* was dismissed, the Secretary of Labor issued a "Notice of intent to issue declaratory order" and request for comment. 79 Fed. Reg. 75,179 (Dec. 17, 2014) (2014 Notice). In the 2014 Notice, the Secretary stated that he disagreed with BALCA's decision in *Island Holdings*, that BALCA "erroneously rejected the Secretary of Labor's own plain interpretation of the relevant regulatory provisions," and that BALCA's conclusions as to DOL's authority were "in direct opposition to the district court's orders in [*CATA I*]." *Id.* at 75,182. Moreover, the Secretary stated that BALCA lacked authority to issue an authoritative interpretation of a DOL regulation for the agency. Noting that the Secretary has the authority to issue a declaratory order overruling BALCA if he "determines that the BALCA's decision rests on a legal error or departs from the Secretary's announced legal interpretation or policy," the Secretary thus "propose[d] issuing a declaratory order to overrule the BALCA's decision and legal conclusions in *Island Holdings*, and to reaffirm the Secretary's interpretation of the regulations." *Id.* at 75,183.

34. After an extension, the comment period on the 2014 Notice closed on February 2, 2015. *See* 80 Fed. Reg. 2445 (Jan. 16, 2015). Thirty-five individuals and organizations submitted comments. *See* https://www.regulations.gov/docketBrowser?rpp=25&so=DESC&sb=commentDueDate&po=0&dct=PS&D=ETA-2014-0003.

35. The Secretary has taken no further action with respect to the proposed order.

36. The SPWDs pending administrative review by BALCA remain unresolved; neither BALCA, OFLC, nor the Secretary has taken any action on them since 2013.

37. As DOL previously stated, as noted above, once DOL allows the SPWDs to take effect, employers will be required to pay workers, including plaintiffs, the wage rate in the SPWD for all work performed on or after the date of the SPWD. If their employers were to refuse to do so, plaintiffs would take legal action to compel them to do so.

38. There is no internal agency process by which plaintiffs can compel DOL to give effect to the SPWDs.

## FIRST CAUSE OF ACTION

**Unlawful Withholding and Unreasonable Delay – 5 U.S.C. § 706(1)**

39. The APA authorizes this Court to compel an agency to act where its failure to do so is unlawfully withheld or unreasonably delayed.

40. As DOL acknowledged in both the 2013 Rule and the 2014 Notice, DOL was legally required to recalculate the prevailing wage for H-2B work performed in 2013 and to impose on employers an obligation to pay workers the revised prevailing wage, in order to comply with "the statutory mandate to protect the domestic labor market," 78 Fed. Reg. at 24,056, and subsequent court orders.

41. Defendants' delay in giving effect to the wage rates set forth in the 2013 SPWDs, including those issued to plaintiffs' employers, is unreasonable.

42. Defendants' failure to give effect to the wage rates set forth in the SPWDs is contrary to both the INA's statutory mandate and the 2013 Rule.

43. Defendants' delay in resolving the administrative reviews that have been pending since 2014 is unreasonable.

44. As DOL acknowledged in the 2013 Rule, individuals in plaintiffs' position were "underpaid in violation of the INA." Because DOL has not given effect to the wage rates set forth in the 2013 SPWDs, plaintiffs remain wrongfully deprived of the lawful wages they are owed for services they provided.

## SECOND CAUSE OF ACTION

**Agency Action Arbitrary, Capricious, and Contrary to Law – 5 U.S.C. § 706(2)**

45. The APA authorizes this Court to hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

46. Defendants' ongoing stay of action with respect to the 2013 SPWDs is arbitrary and capricious, as there is no reasonable basis for continued delay.

47. As DOL recognized in both the 2013 Rule and the 2014 Notice, DOL has the authority to issue supplemental wage determinations where appropriate, and was legally required to do so here to comply with "the statutory mandate to protect the domestic labor market," 78 Fed. Reg. at 24,056, and subsequent court orders.

48. DOL's failure to give effect to the wage rates set forth in the 2013 SPWDs is arbitrary, capricious, and contrary to DOL's 2013 Rule and the INA.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray that this Court:

(A)   Declare that defendants' failure to give effect to the wage rates set forth in the 2013 SPWDs is agency action unreasonably delayed or unlawfully withheld and violates the APA;

(B)   Declare that defendants' continuing stay of action with respect to the 2013 SPWDs is arbitrary, capricious, and contrary to law and violates the APA;

(C)   Order defendants to allow the wage rates contained the positions covered by the 2013 SPWDs to go into effect;

(D)   Set aside defendants' stay of action with respect to the 2013 SPWDs and order Defendants to resolve the pending reviews of the 2013 SPWDs;

(E)   Award plaintiffs their costs and expenses, including reasonable attorney's fees; and

(F)   Grant such other relief as this Court deems just and proper.

Dated: June 24, 2019

Respectfully submitted,

/s/ *Adam R. Pulver*
Adam R. Pulver
D.C. Bar No. 1020475
Michael T. Kirkpatrick
D.C. Bar No. 486293
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

Benjamin R. Botts*
CA Bar No. 274542
Centro de los Derechos del Migrante, Inc.
10 E. North Avenue, #9
Baltimore, Maryland 21202
(855) 234-9699
*Certification of Practice Pursuant to LCvR 83.2(g) forthcoming*

*Counsel for Plaintiffs*