# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOEL DAVILA CALIXTO, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>MARTIN J. WALSH, in his official capacity<br>as United States Secretary of Labor, *et al.*,<br><br>　　　　Defendants. | Civil Action No. 19-1853 (CKK) |

## MEMORANDUM OPINION
(September 23, 2022)

Plaintiffs Joel Davila Calixto, Hector Hernandez Gomez, Leonardo Aviles Romero, Hilario Olvera Gutierrez, and Jorge Palafox Juarez worked as seasonal laborers in the H-2B nonimmigrant visa program in 2013. Compl. ¶¶ 4–8, ECF No. 1. In 2013, the Department of Labor ("DOL") revised its methodology for calculating wages for H-2B workers after a federal district court enjoined and vacated an earlier methodology. DOL then issued "Supplemental Prevailing Wage Determinations"("SPWDs") to Plaintiffs' employers, which increased the wage rates for the services Plaintiffs performed. After several years of administrative proceedings and litigation in this Court and others challenging DOL's authority to issue these SPWDs, DOL vacated them in March 2020—after previously indicating that it *agreed* that the SPWDs were valid. Plaintiffs contend that Defendants DOL and the Secretary of Labor acted arbitrarily and capriciously in changing their position about the validity of the 2013 SPWDs and in vacating the 2013 SPWDs issued to their employers.

Pending before the Court are Plaintiffs' [44] Renewed Motion for Summary Judgment and Defendants' [50] Cross-Motion for Summary Judgment.  Upon consideration of the pleadings,[1] the administrative record,[2] and the relevant legal authorities, the Court concludes that Defendants have demonstrated that they engaged in reasoned decisionmaking with respect to the validity of the 2013 SPWDs.  Accordingly, the Court **DENIES** Plaintiffs' [44] Renewed Motion for Summary Judgment and **GRANTS** Defendants' [50] Cross-Motion for Summary Judgment.

## I.  BACKGROUND

Plaintiffs Joel Davila Calixto, Hector Hernandez Gomez, Leonardo Aviles Romero, Hilario Olvera Gutierrez, and Jorge Palafox are five Mexican nationals who worked in seasonal employment in the United States in 2013 as part of the H-2B nonimmigrant visa program.  Am. Compl. ¶¶ 4–8, ECF No. 36.  The H-2B visa classification applies to workers "coming temporarily to the United States to perform . . . temporary [non-agricultural] service or labor if unemployed persons capable of performing such service or labor cannot be found in his country[.]"  8 U.S.C. § 1101(a)(15)(H)(ii)(b).  Employers seeking to hire H-2B workers are required to obtain a

---

[1] The Court's consideration has focused on the following:

- Plaintiffs' Renewed Motion for Summary Judgment ("Pls.' Mot."), ECF No. 44;
- Defendants' Opposition & Cross-Motion for Summary Judgment ("Defs.' Opp'n & Cross-Mot."), ECF No. 50;
- Plaintiffs' Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment & Reply in Support of Plaintiffs' Renewed Motion for Summary Judgment ("Pls.' Reply  & Opp'n"), ECF No. 51; and
- Defendants' Reply Brief in Support of their Cross-Motion for Summary Judgment ("Defs.' Reply"), ECF No. 53.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

[2] In accordance with Local Civil Rule 7(n), the parties have filed a [54] Joint Appendix containing "copies of those portions of the administrative record that are cited or otherwise relied upon" in their pleadings.  LCvR(n). Citations to the administrative record shall designated as "AR," referring to the page number in the bottom right-hand corner of the materials filed at ECF No. 54.

temporary labor certification ("TLC") from the Secretary of Labor, which establishes that United States workers capable of performing the labor are not available at the prevailing wage for the position for which the employer seeks H-2B workers and that the employment of foreign workers will not adversely affect the wages and working conditions of similarly situated U.S. workers. 8 C.F.R. § 214.2(h)(6)(iii).

As part of DOL's certification process, employers must obtain a "Prevailing Wage Determination" ("PWD") from DOL for the position(s) for which they seek to employ foreign workers. 20 C.F.R. § 655.10(a). The employer must agree that it will pay H-2B workers and U.S. workers a wage that "equals or exceeds the highest of the prevailing wage or Federal minimum wage, State minimum wage, or local minimum wage." 29 C.F.R. § 503.16(a)(1).

In 2013, after legal challenges to a rule promulgated in 2008, DOL revised its methodology for determining "prevailing wage" rates. In general terms, Plaintiffs allege that under this revised methodology they are owed higher wages than they received for their work in 2013. *See* Am. Compl. ¶¶ 1, 27–29, 34. As the history of DOL's determination of prevailing wage rates for H-2B workers (and resulting judicial and administrative proceedings) provides necessary context for Plaintiffs' claims in this action, the Court shall present its discussion chronologically, addressing both the broader factual background of DOL's actions and the facts specific to this case.

**A. Invalidation of 2008 Rule Setting Prevailing Wage Methodology for H2-B Workers and Resulting Litigation.**

In 2008, DOL established a methodology for calculating prevailing wage rates for H-2B workers. *See* DOL, Final Rule, Labor Certification Process and Enforcement for Temporary Employment in Occupations Other than Agricultural or Registered Nursing in the United States (H-2B Workers), 73 Fed. Reg. 78,020 (Dec. 19, 2008) ("2008 Rule"). The 2008 Rule was subsequently invalidated in *Comité de Apoyo a los Trabajadores Agrícolas v. Solis*, Civ. Action

No. 09-240, 2010 WL 3431761, at *19 (E.D. Pa. Aug. 30, 2010) ("*CATA I*").[3]  The *CATA I* court

did not vacate the 2008 rule, but ordered DOL to promulgate a new rule concerning the prevailing

wage rate calculation within 120 days.  *Id.* at *24–28.

      After the *CATA I* court directed DOL to promulgate a new rule addressing PWD

calculations, the plaintiffs asked the court to "to prohibit DOL from issuing an H-2B labor

certification unless and until the employer agrees to pay a prevailing wage rate set by the new

methodology as soon as that methodology is effective."  *Comité de Apoyo a los Trabajadores

Agrícolas v. Solis*, Civ. No. 09-240, 2010 WL 4823236, at *1 (E.D. Pa. Nov. 24, 2010) ("*CATA

II*").  This proposed relief would have required "previously-certified employers" (that is,

employers certified under the now-invalidated methodology) to pay a new PWD upon

promulgation of the DOL's new rule.  *Id.*  DOL argued that this course of action would compel

DOL to violate the following regulation:

> Validity period. The NPC [National Processing Center] must
> specify the validity period of the prevailing wage, which in no event
> may be more than 1 year or less than 3 months from the
> determination date. *For employment that is less than one year in
> duration, the prevailing wage determination shall apply and shall
> be paid the prevailing wage [sic] by the employer, at a minimum,
> for the duration of the employment.*

20 C.F.R. § 655.10(d) (2010) (emphasis added).  DOL argued that this regulation prevented it from

requiring employers to pay a higher wage *after* they had already been certified because it directs

that employers "shall" pay the PWD set during certification "for the duration of the employment."

---

[3] The Court refers to the *CATA* line of decisions cited in this Memorandum Opinion in the order
in which they were issued.  The Court notes, however, that these references may be inconsistent
with the naming conventions used in the parties' briefs, other judicial decisions, and agency
publications.

*CATA II*, 2010 WL 4823236, at *1.  In other words, DOL argued that this "provision sets both a floor and a ceiling on the wage to be paid 'for the duration of employment.'"  *Id.*

The *CATA II* court rejected DOL's interpretation of § 655.10(d) as "plainly erroneous" because it "glosse[d] over the phrase 'at a minimum,' which manifestly sets a floor and not a ceiling."  *Id.* at *1–2.  According to the *CATA II* court, § 655.10(d) directs that an "employer must pay a valid wage for the duration of employment, but it does not follow that an employer must continue paying that wage after it has been deemed to be the product of an invalid regulation."  *Id.* at *1.  Despite its conclusion that "issuance of conditional certifications would not violate existing regulations," the *CATA II* court declined to grant the plaintiffs the relief they requested.  *Id.* at *2.  The court observed that under the plaintiffs' proposed relief, "every H-2B employer who received a conditional labor certification would have to obtain a new PWD after the DOL issued revised wage regulations," which would involve "extensive administration and management," thereby "stretch[ing] this court's equitable authority[.]"  *Id.* at *3.  The court further reasoned that granting the plaintiffs' requested relief would  "blur the line between this court's remedial authority and the DOL's administrative authority," noting that DOL is "surely better positioned than this court to devise a set of procedures for ensuring that the new regulation takes operative effect as soon as possible."  *Id.*

In 2011, DOL issued a new rule changing the methodology for calculating prevailing wages.  *See* DOL, Final Rule, Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program, 76 Fed. Reg. 3452 (Jan. 19, 2011) ("2011 Rule").  The 2011 Rule never went into effect.[4]  Instead, DOL continued to rely on the 2008 Rule's methodology.

---

[4] *See Moodie v. Kiawah Island Inn Co.*, 124 F. Supp. 3d 711, 722 (D.S.C. 2015) (explaining that the 2011 Rule "never went into effect" because "Congress included riders in appropriation bills

**B. 2013 Interim Final Rule.**

In 2013, the *CATA* plaintiffs sued for an injunction barring future use of the 2008 methodology.  *See Comité de Apoyo a los Trabajadores Agrícolas v. Solis*, 933 F. Supp. 2d 700, 709 (E.D. Pa. 2013) ("*CATA III*").  The *CATA III* court vacated the 2008 methodology and ordered DOL to "come into compliance" within 30 days.  *Id.* at 716.

In response to the *CATA III* court's order, on April 24, 2013, DOL and DHS jointly published an Interim Final Rule revising the methodology for calculating the prevailing wage applicable to H2-B workers.  *See* DHS & DOL, Interim Final Rule, Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program, Part 2, 78 Fed. Reg. 24,047 (Apr. 24, 2013) ("2013 IFR") (AR 37–51).  The 2013 IFR found that "U.S. workers and H-2B workers employed under approved certifications, based on the invalid wage rates under the 2008 rule are being underpaid in violation of the [Immigration and Nationality Act]."  *Id.* at 24,056 (AR 46). Therefore to "come into compliance with the [*CATA III*] court's order and to ensure that DHS and DOL fulfill the statutory mandate to protect the domestic labor market, DHS and DOL must immediately set new and legally valid prevailing wage rate standards to allow for immediate adjustment of wage rates for these currently employed workers."  *Id.*

The 2013 IFR became "effective immediately" and applied to "all requests for prevailing wage determinations and applications for [TLCs] in the H-2B program issued *on or after* the effective date of this interim rule."  *Id.* at 24,055 (AR 45) (emphasis added).  The preamble of the 2013 IFR states that "[u]pon individual notification to the employer of a new prevailing wage, the new wage methodology will also apply to all *previously granted* H-2B [TLCs] for any work

---

barring the DOL from expending funds to implement the rule," which "effectively barred implementation of the rule, so the DOL continued to apply the [2008 Rule]").

performed on or after the effective date of this interim rule." *Id.* (emphasis added).  In support of its application of this revised methodology to "previously granted" TLCs, the 2013 IFR preamble cites the TLC application form ("ETA Form 9142"), in which employers must certify as a condition of employment under the H-2B program that they will offer and pay "*the most recent prevailing wage * * * issued by the Department to the employer for the time period the work is performed.*" *Id.* (emphasis added).

Defendants indicate that, on April 25, 2013, the agencies "clarified" on a "FAQs" page of USCIS's website that H-2B employers would be required to pay the rates set by "Supplemental Prevailing Wage Determinations" ("SPWDs") issued to employers for work "performed on and after the date the employer *receives* the SPWD from DOL."  See Defs.' Opp'n & Cross-Mot. at 6 (emphasis added).  DOL's Office of Foreign Labor Certification ("OFLC') then sent individual notifications to H-2B employers who had previously obtained TLCs to participate in the 2013 H-2B program.  Each notice issued by OFLC informed employers that DHS and DOL had revised the methodology for calculating prevailing wages under the H-2B program, identified the applicable "supplemental" prevailing wage rate, and stated that "the employer is responsible for compliance with this supplemental prevailing wage determination . . . upon notification by DOL." *See, e.g.*, AR 4484–88, 4527–30, 4704–06.  These notices also informed employers that they could seek administrative review of the SPWD within 30 days, pursuant to 20 C.F.R. § 655.10(g).  *Id.*

**C.  Plaintiffs' Employment in 2013 and SPWDs Sent to Their Employers.**

Plaintiffs are five workers who participated in H-2B nonimmigrant visa program in 2013.  Am. Compl. ¶¶ 4–8.  Each of their employers received a notice from OFLC in 2013, containing the information described above and specifying a "supplemental" prevailing wage rate ("SPWD").

Plaintiffs Joel Davila Calixto and Hector Hernandez Gomez worked under the H-2B program as landscapers for St. Louis Select Landscaping and Lawn Care in Missouri during the spring and summer of 2013.  Declaration of Joel Davila Calixto ("Calixto Decl.") ¶ 4, ECF No. 16-6; Am. Compl. ¶ 12.  Plaintiff Calixto attests that he was paid $10.25 per hour.  Calixto Decl. ¶ 4.  There is no evidence on the record indicating the precise amount Plaintiff Gomez was actually paid, as he has not submitted a declaration.  OFLC issued an SPWD to their employer, St. Louis Select Landscaping and Lawn Care on July 3, 2013, which set a supplemental prevailing wage rate of $12.15 per hour for landscape laborers in that geographic area.  AR 4704–05.

Plaintiffs Leonardo Aviles Romero and Hilario Olvera Gutierrez worked under the H-2B program as landscapers for Outside Unlimited LLC in Maryland, Pennsylvania, and Virginia during the spring, summer, and fall of 2013.  Declaration of Leonardo Aviles Romero ("Romero Decl.") ¶¶ 3–4, ECF No. 16-7; Declaration of Hilario Olivera Gutierrez ("Gutierrez Decl.") ¶¶ 3–4, ECF No. 16-8.  Plaintiff Romero was paid $11 per hour, and Plaintiff Gutierrez was paid $9.54 per hour.  Romero Decl. ¶ 4; Gutierrez Decl. ¶ 4.  OFLC issued two SPWD notices to Outside Unlimited LLC.  The first, issued on July 9, 2013, provided a supplemental prevailing wage rate of $14.04 per hour for landscape laborers in Pennsylvania.  AR 4600–02.  The second, issued on July 16, 2013, set a supplemental prevailing wage rate for the parts of Maryland in which these two Plaintiffs worked: $12.41 per hour in Baltimore and Carroll Counties, and $12.51 per hour in Frederick County.  AR 4527–30.

Plaintiff Jorge Palafox Juarez worked under the H-2B program in food preparation for JLQ Concessions, traveling to fairs in California during the summer of 2013.  Declaration of Jorge Palafox Juarez ("Juarez Decl.") ¶ 4, ECF No. 16-9.  He was paid $40 per day during fair preparation days and $85 per day during fair operations.  *Id.*  On June 27, 2013 OFLC issued an

SPWD to JLQ Concessions providing the "supplemental" prevailing wage rates ranging from $10.08 to $11.62 per hour depending on the location in California.  AR 4484–87.

Each of Plaintiffs' employers sought administrative review of the SPWDs issued to them. *See* AR 4468–71 (JLQ Concessions), 4500–07 (Outside Unlimited, Inc.), 4590–93 (Outside Unlimited LLC), 4669–73 (St. Louis Select Landscape and Lawn Care).

Plaintiffs' employers were not alone in seeking redetermination of the SPWDs issued to them; Defendants indicate that H-2B employers challenged approximately one-third of the SPWDs issued pursuant to the 2013 IFR.  Defs.' Opp'n & Cross-Mot. at 6.  DOL took the position that the updated wage rate contained in the SPWDs "does not go into effect during the time the determination is under review."  Declaration of William L. Carlson ("Carlson Decl.") ¶ 12, ECF No. 166-2, *Comité de Apoyo a los Trabajadores Agrícolas, et al*. *v. Dep't of Labor*, Civil No. 09-240-LDD (E.D. Pa.) (filed in this action at ECF No. 16-3).  If, however, the SPWD was upheld on administrative appeal, the employer would "be required to pay the wage rate in the SPWD for all work performed on and after the date of the SPWD."  *Id.* ¶¶ 11–12.

Plaintiffs' employers challenged the 2013 SPWDs on the grounds that DOL lacked authority to issue them.  *See* AR 4478–80, 4558–60, 4640–43, 4700–03.  OFLC denied each of Plaintiffs' employers' redetermination requests.  *See* AR 4476–77, 4555–56, 4637–38, 4697–98.

### D. BALCA's *Island Holdings* Decision and Resulting Litigation.

Another employer (separate from Plaintiffs' employers in this case), Island Holdings, LLC, challenged three SPWDs it received and sought review by  DOL's Board of Alien Labor Certification Appeals ("BALCA").[5]  *See In the Matter of Island Holdings LLC*, 2013-PWD-00002

---

[5] The Secretary has delegated to BALCA the authority to consider appeals from denials of H-2B certifications and appeals from the H-2B prevailing wage determinations.  *See* 20 C.F.R. §§ 655.11(e), 655.33.

(BALCA Dec. 3, 2013) ("*Island Holdings*") (AR 52–66).  Island Holdings had obtained TLCs before the 2013 IFR, but later received three SPWDs in May 2013, which resulted in increased prevailing wage rates.  *Id.* at *6–7 (AR 57–58).  The issue before BALCA was "what effect" the revised prevailing wage methodology set forth in the 2013 IFR had on a TLC that "[DOL] approved and certified *before* the [2013] IFR went into effect."  *Id.* at *9 (AR 60).

BALCA concluded that DOL's regulations "do not require an employer to comply with a prevailing wage determination issued *after* [DOL] has approved and granted the employer's [TLC application]."  *Id.* at *2 (AR 53).  BALCA relied on regulations requiring employers to "offer" to "both its H-2B workers and any similarly employed U.S. worker" the "prevailing wage determination" (or higher) set by DOL during the employer's application for a TLC.  *Id.* at *9 (AR 60) (citing 20 C.F.R. § 655.10(b)(6) (2012)).  BALCA then cited § 655.10(d) (the same provision relied upon by the *CATA II* court, *supra* Section I(A)), which specifies that "[f]or employment that is less than one year in duration, the prevailing wage determinations shall apply and shall be paid the prevailing wage by the employer, at a minimum, for the duration of the employment."  *Id.* at *10 (AR 61) (citing 20 C.F.R. § 655.10(d) (2012)).  In a footnote, BALCA addressed the *CATA II* court's conclusion that this same regulation did *not* prohibit DOL from issuing post-certification prevailing wage rates to employers.  *Id.* at *10 n.13 (AR 61).  Addressing the *CATA II* court's reasoning that § 655.10(d) set a "floor" and not a "ceiling," BALCA reasoned: "But by setting a floor for the employer [DOL] sets a ceiling for itself—unless and until it promulgates a new rule to modify the regulation."  *Id.*

BALCA also found that although the *preamble* to the 2013 IFR indicated DOL's "intent" to issue post-certification PWDs, the "regulatory text codified in the IFR" did not reflect this intent.  *Id.* at *11–12 (AR 62–63).  According to BALCA, DOL's "commentary" about its authority to

"change a wage midseason" appeared only in the *preamble* of the 2013 IFR "without citing any specific statutory or regulatory provision authorizing it to do so"  *Id.*; *see* 78 Fed. Reg at 24,056 (AR 46).  The regulatory text itself supplied no "authority to issue a post-certification prevailing wage determination" nor did it "require any employer to comply with such a post-certification prevailing wage determination."  *Island Holdings*, at *12 (AR 63).

In addition, BALCA examined the employer certification portion of the TLC application—specifically, Paragraph 5 of Appendix B.1 to the *Application for Temporary Employment Certification.  Id.*  In seeking a TLC, an employer was required to certify that the "offered wage equals or exceeds the highest of the *most recent prevailing wage* that is or *will be issued* by the Department to the employer for the time period the work is performed . . . and the employer will pay the offered wage."  *Id.* at *12–13 (AR 63–64).  BALCA concluded that DOL's reliance on this provision was "misplaced" because it required an employer to attest "to a condition that is not required by regulations" and because DOL cannot "impose additional legal obligations on a regulated party without following procedures mandated by the APA."  *Id.* at *13 (AR 64).

In sum, BALCA concluded that the 2013 SPWDs issued to Island Holdings should be vacated because DOL lacked authority to require employers to increase the wages paid to H-2B workers *after* DOL had already approved the employer's TLC at a lower rate.  *Id.* at *15 (AR 66).

BALCA's *Island Holdings* decision became the subject of a new lawsuit, in which the plaintiffs contended that BALCA's decision violated the APA.  *See* Compl., ECF No. 1, *Comité de Apoyo a los Trabajadores Agrícolas v. Perez*, Case No. 2:13-cv-7213 (E.D. Pa. Dec. 11, 2013). After the complaint was filed in that case, on December 23, 2013, OLFC announced that it would "postpone action on the *Island Holdings* decision pending judicial review."  AR 67.   The

announcement further indicated that "all OFLC actions related to the resolution of appeals in the [SPWD] decisions will be *stayed*, pending the resolution of the district court action." *Id.*

On July 13, 2014, the U.S. District Court for the Eastern District of Pennsylvania dismissed the complaint challenging BALCA's *Island Holdings* decision. *See Comité de Apoyo a los Trabajadores Agrícolas v. Perez*, 46 F. Supp. 3d 550 (E.D. Pa. 2014) (*"CATA IV"*). The plaintiffs in that case contended that BALCA's *Island Holdings* decision was a "final agency action" which "retroactively invalidated all of the SPWDs issued to H-2B employers under the 2013 IFR" and "improperly reduced the prevailing wages required by [*CATA III's*] *vacatur* order and the 2013 IFR." *Id.* at 560–61. The court found that the plaintiffs lacked standing because they had not demonstrated "any agency action applying BALCA's rulings in *Island Holdings* to Plaintiffs . . . in any fashion that harms or threatens to harm them." *Id.* at 561. Instead, the Court noted, the "record shows . . . that any further agency action on the contested SPWDs has been indefinitely stayed across the board." *Id.* The *CATA IV* court further determined that although BALCA's decision "might be viewed as final vis-à-vis *that* employer," (i.e., Island Holdings), it did not constitute "final agency action" as to the plaintiffs in that case because it is "the Secretary of Labor, and not BALCA, that ultimately makes the policies and rules governing H-2B prevailing wages." *Id.* at 561–62.

Even after the *CATA IV* decision, DOL continued to stay the pending appeals brought by H-2B employers challenging the 2013 SPWDS (including the appeals by Plaintiffs' employers).

### E.  DOL's 2014 Notice of Intent to Issue Declaratory Order.

On December 17, 2014, DOL published a Notice of Intent to Issue [a] Declaratory Order under the APA, 5 U.S.C. § 554(e). 79 Fed. Reg. 75,179 (Dec. 17, 2014) ("2014 Notice of Intent") (AR 68–73). Therein, DOL indicated that pursuant to § 554(e), the "Secretary is now considering

issuing on his own motion a declaratory order to clarify his authority to set law and policy in the H-2B labor certification program, and to resolve the controversy arising from the BALCA's legally erroneous decision [in *Island Holdings*]." *Id.* at 72.[6]

The 2014 Notice of Intent observed that BALCA's *Island Holdings* decision "created uncertainty about . . . the immediate application of the revised wage regulation in the [2013] IFR to employers with H-2B workers employed at the time of the [2013] IFR, but with prevailing wages set under the vacated 2008 wage rule." *Id.* at 75,182 (AR 71).  It further indicated that BALCA's conclusion in *Island Holdings* that "[DOL] is without authority to issue [SPWDs]" "does not reflect the legal position of the Secretary of Labor," and "is in direct opposition to the district court's orders in the *CATA* case, and potentially leaves [DOL] susceptible to conflicting legal obligations." *Id.*  It was DOL's position that the *CATA* rulings "make it clear that the [*CATA III*] court expected that once DOL issued a valid regulatory method for determining the prevailing wage, the agency would also issue [SPWDs] with current labor certifications to correct the unlawful wage issued with those extent certifications.  The Secretary determined that the court's orders obliged [DOL] to issue the SPWDs[.]" *Id.*  The 2014 Notice of Intent also cited the *CATA II* court's conclusion that nothing in the existing H-2B regulations precluded DOL from issuing certifications conditioned on a promise to pay a new prevailing wage as soon as one "became effective." *Id.* (citing *CATA II*, 2010 WL 4823236, at *2–3).

Based on these conclusions, the Secretary "propose[d] issuing a declaratory order to overrule the BALCA's decision and legal conclusions in *Island Holdings*" and to "eliminate the confusion and uncertainty" by addressing the "concrete and narrow question of law about the scope

---

[6] Section 554(e) of the APA provides: "The agency, with like effects as in the case of other order, and in its sound discretion, may issue a declaratory order to terminate a controversy or remove uncertainty."  5 U.S.C. § 554(e).

of the [2013] IFR as applied to the factual scenario in *Island Holdings*." *Id.* at 75,183.  The

Secretary's proposed declaratory order would "resolve" the SPWDs at issue in *Island Holdings*

and any similar pending cases.  *Id.*

The comment period for this 2014 Notice of Intent closed on February 2, 2015.  *See* 80

Fed. Reg. 2445 (Jan. 16, 2015).  However, the then-Secretary of Labor took no further action with

respect to the proposed declaratory order; approximately 1,000 SPWD administrative appeals

remained pending and stayed.  Defs.' Opp'n & Cross-Mot. at 8; Pls.' Mot. at 11.

**F.  Plaintiffs' Original Complaint and Related Proceedings in this Case.**

Plaintiffs filed their Original Complaint in this action on June 24, 2019 against DOL and

the Secretary of Labor ("Defendants").  *See* Compl., ECF No. 1.  Therein, they alleged that none

of their employers have paid "back wages to account for the difference between the SPWD wage

rate and the wage they actually paid in 2013."  Compl. ¶ 27.  In their Original Complaint, Plaintiffs

asserted two causes of action under the APA.  First, Plaintiffs alleged that DOL's failure to "give

effect" to the wage rates set forth in the 2013 SPWDs issued to their employers pursuant to the

2013 IFR constituted unreasonable agency action under section 706(1) of the APA.  *Id.*  ¶¶ 42–44.

And second, Plaintiffs contended that DOL's "ongoing stay of action" with respect to the 2013

SPWDs was "arbitrary and capricious."  *Id.* ¶¶ 46–48.

Defendants moved to dismiss Plaintiff's complaint on September 26, 2019, arguing that

the Court lacked jurisdiction and the Complaint failed to state a claim for relief because Plaintiffs

had not alleged a "discrete agency action subject to judicial review under the APA" and "have

[not] established that there is an actual controversy between the parties."  *See* Defs.' Mot. to

Dismiss at 1, ECF No. 13.  On the latter point, Defendants argued that there was no "case or controversy" because DOL "agree[d] with Plaintiffs' position on SPWD wages."[7]  *Id.* at 13–14.

Plaintiffs then filed a cross-motion for summary judgment on November 4, 2019.  *See* Pls.' [1st] Mot. for Summ. J., ECF No. 16.  On December 2, 2019, Defendants requested an extension of time to respond to Plaintiffs' summary judgment motion on the basis that DOL was "considering potential administrative action that would result in the resolution of the issues raised in Plaintiff's complaint, cross-motion and opposition without the need for judicial intervention."  *See* Consent Mot. for Extension of Time ¶ 2, ECF No. 18.  The Court granted Defendants' request for an extension.  *See* Minute Order (Dec. 3, 2019).

On December 30, 2019, Defendants' counsel informed Plaintiffs' counsel by email: "[W]ithin the next few weeks, DOL will lift the stay of action in the pending 2013 SPWD employer appeals in this case (as well as the 1,000+ other appeals).  Shortly thereafter, the Administrator will issue a decision affirming the wage rates contained in the 2013 SPWDs."  *See* Pls.' Opp'n to Mot. for Extension ¶ 4, ECF No. 21.  On January 2, 2020, Defendants sought an additional extension of time, indicating that DOL had "finalized a plan to take administrative action that will resolve the issues raised in Plaintiffs' complaint."  *See* Defs.' Consent Mot. for Add'l Extension

---

[7] In a separate lawsuit filed by H-2B workers in the U.S. District Court for the District of Maryland, the plaintiffs challenged, among other things, BALCA's *Island Holdings* decision as arbitrary and capricious and claimed that DOL's delay in issuing a Declaratory Order following its 2014 Notice of Intent was unreasonable under the APA.  *See Gonzales Aviles v. Perez*, 15-cv-3463, 2016 WL 3440581, at *1 (D. Md. June 17, 2016).  They also sought an order declaring that the wages set in the 2013 SPWDs are "lawfully required" and must be paid.  *Id.*  The court dismissed the case, concluding that the plaintiffs had failed to identify a "final agency action" because BALCA's decision "does not represent a 'final decision' of [DOL]."  *Id.*  The court further concluded that plaintiffs' unreasonable delay claim failed because there "is no requirement that the Department issue the Order and that is fatal to the claim."  *Id.* at *2 n.1.  The court also concluded that the plaintiffs lacked standing to obtain the requested declaratory relief because "there is no actual controversy between plaintiffs and [DOL] because [DOL] has stated that it agrees with plaintiffs' position on SPWD wages, contrary to the position taken by the BALCA."  *Id.*

of Time ¶ 2, ECF No. 19.  Defendants explained that OFLC will "resume processing of the employer challenges to the [SPWD] determinations that were issued to Plaintiffs' employers . . . in 2013[,]" and will "issue a decision concerning the employers' challenges to the wage rates contained in the 2013 SPWDs to complete OFLC's administrative review."  *Id.*  Relying on the email from Defendants' counsel, Plaintiffs did not oppose this second request for an extension of time.  *See* Pls.' Opp'n to Mot. for Extension ¶ 4, ECF No. 21.  The Court again granted Defendants' request for an extension of time to respond and ordered Defendants to file by February 24, 2020 their response to Plaintiffs' summary judgment motion or "to take administrative action to resume processing the employer appeals" and "issue a decision from the [OFLC] Center Director."  *See* Minute Order (Jan. 6, 2020).

On February 20, 2020, Defendants requested a fourteen-day extension of time to "take final administrative action in lieu" of filing its response to Plaintiffs' motion for summary judgment.  *See* Defs.' Mot. for Extension, ECF No. 20.  In their motion, Defendants indicated that they were unable to complete the final administrative action by the February 24, 2020 set by the Court due to unspecified "unanticipated and exceptional circumstances."  *Id.* at 2.  Plaintiffs opposed Defendants' motion on the grounds that they "do not know whether the actions DOL is intending to take will actually resolve this case."  Pls.' Opp'n to Mot. for Extension ¶ 7, ECF No. 21.  The Court granted Defendants' motion, allowing Defendants until March 9, 2020 to "complete the final administrative action or file a Reply and Response to Plaintiffs' Opposition and Cross-Motion for Summary Judgment."  Minute Order (Feb. 21, 2020).  The Court noted that this would be "Defendants' final extension for making this filing."  *Id.*

16

**G. March 2020 Withdrawal Notice and Determinations of Plaintiffs' Employers' Appeals.**

On March 9, 2020 (the same date Defendants' responsive pleading was due), DOL issued a Withdrawal of Notice of Intent to Issue a Declaratory Order, 85 Fed. Reg 14,706 (Mar. 13, 2020) ("2020 Withdrawal Notice") (AR 4722–27),[8] in which DOL indicated that it was withdrawing the 2014 Notice of Intent. According to the 2020 Withdrawal Notice, DOL determined not to issue a declaratory order under APA § 554(e) because "[e]xisting DOL regulations . . . do not contemplate such orders or provide procedures for their issuance." *Id.* at 14,708–09 (AR 4724–25). It noted that DOL "does not appear to have ever issued a Section 554(e) order, nor to have used such an order to reverse an agency action," here, a BALCA decision, that under DOL regulations constituted "the final . . . decision of the Secretary." *Id.* at 14,708 (AR 4724) (citing 29 C.F.R. § 18.58 (2012)).

The 2020 Withdrawal Notice further states DOL's (changed) position that BALCA's *Island Holdings* decision "sets forth the better view of law as to the 2013 SPWDs." *Id.* at 14,709 (AR 4725). DOL explained that its regulations required H-2B employers to agree to pay the original prevailing wage determination "for the duration of employment," meaning for the "entire period of the approved H-2B labor certification." *Id.* In other words, DOL concluded that it lacked authority to raise prevailing wage determinations for employers who had been certified for the H-2B program prior to the 2013 IFR (as BALCA had concluded *Island Holdings*). DOL further indicated that the *CATA III* decision vacating the 2008 prevailing wage methodology court did *not* "compel" DOL to issue SPWDs. *Id.* at 14,710 (AR 4726). And, it noted that practical considerations supported "accepting *Island Holdings*," citing the time and resources that would be

---

[8] This Notice indicated that it was "effective" as of March 9, 2020, but its publication date in the Federal Register was March 13, 2020.

expended to adjudicate 1,050 pending employer SPWD  appeals, as well as the "significant obstacles that now exist to compliance and enforcement" of the 2013 SPWDs.  *Id.*

On March 9, 2020, pursuant to the 2020 Withdrawal Notice, DOL also issued letters to Plaintiffs' employers, resolving their requests for review of the 2013 SPWDs and vacating the "increased wage obligation that the SPWD purported to impose."  AR 4734–37, 4743–54, 4779–82.

### H.  Plaintiffs' Amended and Supplemental Complaint.

On March 11, 2020, Plaintiffs filed a [24] Notice of Additional Administrative Action, in which Plaintiffs stated that "Defendants have taken action directly contrary to the action that Defendants' counsel previously indicated that Defendants would take," referring to Defendants' counsel's December 30, 2019 correspondence.  Notice at 1, ECF No. 24.  Plaintiffs further indicated that they intended to move for leave to file an amended complaint.  *Id.*  Defendants filed a response, in which they argued that the final agency actions issued by the DOL "render moot all claims for relief in Plaintiffs' Complaint."  Defs.' Resp to Pls.' Notice at 2, ECF No. 25.

In light of these "drastically changed circumstances," the Court denied without prejudice Defendants' [13] Motion to Dismiss and Plaintiffs' [16] Motion for Summary Judgment. Minute Order (Mar. 12, 2020).  The Court set a briefing schedule for Plaintiffs' proposed motion for leave to amend their complaint, and directed the parties to address in their briefing "whether or not Plaintiffs' current Complaint has been made moot by Defendants' decision" and "if so, what effect the mootness has on Plaintiffs' request to file an Amended Complaint."  *Id.*  Upon consideration of the parties' pleadings, the Court granted Plaintiffs' motion to supplement and amend their complaint.  *See* Order, ECF No. 34; Mem. Op., ECF No. 35.

In their First Amended and Supplemental Complaint, Plaintiffs assert three APA claims. *First*, Plaintiffs claim that DOL has unlawfully withheld and unreasonably delayed issuing SPWDs to Plaintiffs' employers reflecting the prevailing wage methodology contained in the 2013 IFR, in violation of 5 U.S.C. § 706(1). Am. Compl. ¶¶ 57–61. *Second*, Plaintiffs claim that the Secretary's 2020 Withdrawal Notice was an arbitrary and capricious final agency action under 5 U.S.C. § 706(2). *Id.* ¶¶ 62–65. And *third*, Plaintiffs contend that each of the letters sent to Plaintiffs' employers on March 9, 2020 constitutes final agency action, which was arbitrary and capricious under 5 U.S.C. § 706(2). Plaintiffs seek declaratory and injunctive relief based on these alleged APA violations. The parties have filed cross-motions for summary judgment. Plaintiffs indicate that they are "no longer pursuing the first cause of action" contained in the First Amended and Supplemental Complaint, so only Plaintiffs' second and third causes of action remain at issue. Pls.' Mot. at 15. The parties' motions are ripe for the Court's review.

## II.   LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." However, "when a party seeks review of agency action under the APA [before a district court], the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). Accordingly, "the standard set forth in Rule 56[ ] does not apply because of the limited role of a court in reviewing the administrative record." *Southeast Conference v. Vilsack*, 684 F. Supp. 2d 135, 142 (D.D.C. 2010). "Summary judgment is [ ] the

mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Id.*

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009).  It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  "This is a 'narrow' standard of review as courts defer to the agency's expertise." *Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138 (D.D.C. 2012) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  As the "focal point" in administrative review, the Court's inquiry is limited to the administrative record before it. *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

## III.   DISCUSSION

Plaintiffs challenge as "arbitrary and capricious" DOL's 2020 Withdrawal Notice, in which DOL adopted BALCA's *Island Holdings* reasoning to invalidate the SPWDs issued to Plaintiffs' employers, as well as DOL's implementation of this policy through the letters issued to Plaintiffs' employers vacating the 2013 SPWDs.  For the reasons set forth below, the Court concludes that Plaintiffs have not demonstrated that DOL's policy change was arbitrary and capricious.  First, however, the Court must address Plaintiffs' standing to challenge these actions by DOL.

### A.   Plaintiffs Have Standing to Challenge the 2020 Withdrawal Notice and Letters Issued to their Employers Vacating the 2013 SPWDs.

Defendants argue that Plaintiffs lack standing to challenge the letters issued to their H-2B employers in March 2020, which vacated the SPWDs issued to them in 2013. *See* Defs.' Opp'n & Cross-Mot. at 21–23.  Neither party addresses Plaintiffs' standing to challenge the 2020 Withdrawal Notice.  Because "[e]nsuring that a plaintiff has standing to sue" is a "necessary

'predicate to any exercise of [the Court's] jurisdiction,'" the Court assesses Plaintiffs' standing as to both issues. *Ryan, LLC v. Lew*, 934 F. Supp. 2d 159, 164 (D.D.C. 2013) (quoting *Fla. Audubon Soc'y v. Bentsen,* 94 F.3d 658, 663 (D.C. Cir. 1996)); *see also Lee's Summit v. Surface Transp. Bd.*, 231 F.3d 39, 41 (D.C. Cir. 2000) ("[Where a party's] Article III standing is unclear," the Court "must resolve the doubt, *sua sponte* if need be.").

"Article III of the Constitution confines the jurisdiction of the federal courts to actual 'Cases' and 'Controversies,' and . . . 'the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process.'" *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 239 (D.C. Cir. 2015) (quoting *Clinton v. New York*, 524 U.S. 417, 429 (1998) (additional citation omitted)). Plaintiffs have the burden of demonstrating that they have standing to pursue their claims. *Id.* To satisfy the "irreducible constitutional minimum of standing" Plaintiffs must demonstrate: (1) an "injury in fact . . . which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical,"; (2) "a causal connection between the injury and the conduct complained of"; and (3) that it is "likely," not "speculative," that the injury "will be redressed by a favorable decision." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (citing *City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983)). At the summary judgment stage, a plaintiff cannot rest on "mere allegations" to establish standing but must "set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Swanson Grp.*, 790 F.3d at 240 (cleaned up) (quoting *Lujan*, 504 U.S. at 561).

The Court is satisfied that Plaintiffs have standing to challenge both DOL's 2020 Withdrawal Notice and the letters issued to their employers vacating the 2013 SPWDs. The 2020

Withdrawal Notice adopted BALCA's *Island Holdings* decision as DOL's policy with respect to the invalidity of SPWDs issued to H-2B employers who had received TLCs based on prevailing wage determinations set *before* the 2013 IFR (which is the case as to all of Plaintiffs' employers). The notices issued to their employers in March 2020 then implemented that policy, vacating the SPWDs issued to Plaintiffs' employers in 2013. *See* AR 4734–35, 4736–37, 4743–44, 4745–46, 4747–48, 4749–50, 4751–52, 4753–54 (notices to Plaintiffs' employers dated March 9, 2020 directing that "the increased wage obligation that the SPWD purported to impose is now vacated").

Plaintiffs argue that they have standing to challenge both actions because they suffered an "injury in fact" by not being paid the wages specified in the 2013 SPWDs *and* by being foreclosed from pursuing those wages when the notices sent to their employers relieved the employers of "the legal obligation to pay" Plaintiffs the SPWD rates. Pls.' Reply & Opp'n at 12, 15. In support of this argument, each Plaintiff[9] has submitted a declaration averring that he was not paid the wage rate directed in the 2013 SPWD issued to his employer, that he did not receive backpay, and that he would pursue backpay if the wages rates set forth in the SPWDs had been enforced. *See* Calixto Decl. ¶¶ 5, 6; Romero Decl. ¶¶ 5, 6; Gutierrez Decl. ¶¶ 5, 6; Juarez Decl. ¶¶ 5, 6.

Defendants argue that these affidavits are insufficiently specific to establish an "injury in fact," relying on the proposition that general averments of "economic loss and hardship" are insufficient to establish this aspect of standing at the summary judgment stage. *See* Defs.' Opp'n & Cross-Mot. at 21–22 (citing *Swanson Group*, 790 F.3d at 242). But the Court agrees with Plaintiffs that the evidence on the record does more than assert conclusory allegations of economic

---

[9] Plaintiff Gomez did not submit any declaration attesting to the wages he received in 2013. *See supra* Section I(C). However, if one plaintiff "has shown sufficient evidence to withstand summary judgment on standing," the Court "need not consider the standing" of other plaintiffs. *See Florida Audubon Soc'y*, 94 F.3d at n.1 (citations omitted).

loss, as Defendants suggest, *see id.*; rather, Plaintiffs have demonstrated the wages they actually received in 2013, versus those that they would have received pursuant to the 2013 SPWDs issued under the revised prevailing wage methodology established by the 2013 IFR. *See supra* Section I(C). By adopting BALCA's *Island Holdings* decision as agency policy with respect to the validity of the SPWDs and vacating the SPWDs applicable to Plaintiffs' employers, Defendants have "permanently" affected the prevailing wages applicable to Plaintiffs for the services they performed in 2013. *Cf. CATA IV*, 46 F. Supp. 3d at 561 (concluding, prior to 2020 Withdrawal Notice, that plaintiffs lacked standing because BALCA's ruling had "not yet permanently reduced any worker's wages"). Plaintiffs, therefore, have demonstrated that they have suffered an actual concrete injury. For these same reasons, Plaintiffs have also established that the actions of DOL *caused* their injury—a point that Defendants do not appear to contest.

Finally, the Court agrees with Plaintiffs that they have adequately demonstrated a likelihood that their injury would be redressed by a judicial decision in their favor. *Nat'l Wildlife Fed'n v. Hodel*, 839 F.2d 694, 705 (D.C. Cir. 1988) ("[A] party seeking judicial relief need not show to a certainty that a favorable decision will redress his injury. A mere likelihood will do."). Defendants challenge this facet of the standing inquiry as to Plaintiffs' claims regarding DOL's rescission of the 2013 SPWDs applicable to their employers. *See* Defs.' Opp'n & Cross-Mot. at 21–23 Defendants argue that Plaintiffs were not parties to their employers' appeals of the 2013 SPWDs and "have never clarified that they will ever get back pay[,]" in the event the Court determined that DOL's decisions on those appeals were unlawful. *Id.* at 22. In sum, Defendants contend that the redressability prong of standing is lacking because the challenged agency action involved directive issued to Plaintiffs' employers (rather than Plaintiffs themselves). *See id.*

However, as Plaintiffs note, the D.C. Circuit has explained that the "redressability element of constitutional standing" does not "require a plaintiff to establish that the defendant agency will actually enforce any new binding regulations against the regulated third party." *Animal Legal Def. Fund v. Glickman*, 154 F.3d 426, 444 (D.C. Cir. 1998); *see also Nat. Law Party of U.S. v. FEC*, 111 F. Supp. 2d 33, 50 (D.D.C. 2000) ("Plaintiffs need not demonstrate that judicial review of the FEC's interpretation will lead to the ultimate relief sought[.]").  The Court finds that Plaintiffs have sufficiently demonstrated that their claims would be redressable because if the Court were to grant the relief they seek, the SPWDs would be in effect and would permit Plaintiffs to pursue back wages based on the wage rates specified therein.  *See* Pls.' Reply & Opp'n at 13.

## B.  The 2020 Withdrawal Notice Was Not Arbitrary and Capricious.

Turning to the merits of Plaintiffs' remaining causes of action, Plaintiffs first contend that DOL's 2020 Withdrawal Notice was arbitrary, capricious, and contrary to law.  *See* Pls.' Mot. at 18–35.  Plaintiffs seek relief under section 706(2)(A) of the APA, pursuant to which courts must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

Before addressing Plaintiffs' specific challenges, the Court notes that neither party contests that the 2020 Withdrawal Notice constituted a "final agency action," subject to judicial review under the APA.  *See* Pls.' Mot. at 16–18; Defs.' Opp'n & Cross-Mot. at 11 (acknowledging that the purpose of the 2020 Withdrawal Notice was to "provide certainty and finality").  An agency's decision "not to initiate a declaratory order proceeding" is a "final agency action."  *Intercity Transp. Co. v. United States*, 737 F.2d 103, 106 (D.C. Cir. 1984) (concluding that decision not to initiate a declaratory order proceeding is "final" because such a decision is "not subject to alteration" and "has legal consequence").  To be "final, an "agency action" must "mark the consummation of the agency's decisionmaking process" and "be one by which rights or obligations

24

have been determined," or from which "legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal citations and quotation marks omitted).  Moreover, DOL announced through the 2020 Withdrawal Notice that it would adopt BALCA's holding as to all 2013 SPWDs issued to H-2B employers who obtained TLCs at prevailing wage rates determined prior to the 2013 IFR; this plainly consummated the agency's decisionmaking process as to the validity of those SPWDs.

Plaintiffs challenge two aspects of the 2020 Withdrawal Notice as "arbitrary and capricious."  First, they argue that it fails to provide a reasoned explanation for its "reversal" of its position in the 2014 Notice that the Secretary would issue a declaratory order under 5 U.S.C. § 554(e) to overrule BALCA's *Island Holdings* decision.  *See* Pls.' Mot. at 19–24.  Second, Plaintiffs argue that DOL's decision to adopt *Island Holdings'* conclusion that the 2013 SPWDs were invalid as its "official policy" was arbitrary and capricious.  *See id.* at 24–31.  The Court shall address each in turn, but first shall present the legal framework applicable to its analysis of "changed" agency policy.

"Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change."  *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016).  The parties agree that the Supreme Court's analysis in *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) supplies the appropriate framework for assessing whether or not an agency's "changed" policy is "reasoned" or arbitrary and capricious under the APA.  *See* Pls.' Mot. at 18–19; Defs.' Cross-Mot. & Opp'n at 13.  As explained in *Fox* and its progeny, when an agency action changes or reverses a prior policy, the agency must "display awareness that it *is* changing position."  556 U.S. at 515.  The agency may not "depart from a prior policy *sub silentio*."  *Id.*  The agency must "show that there are good reasons for the new policy," but it is not required to explain why the

"new" policy is "better" than the "old" one.  *Id.*  It is sufficient "that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates."  *Id.*  Further, in explaining its changed position, the agency must "be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'"  *Encino Motorcars*, 579 U.S. at 222 (quoting *Fox*, 556 U.S. at 515).

### 1.  DOL's Decision Not to Issue Declaratory Order.

Plaintiffs first argue that DOL's decision not to proceed with a declaratory order under § 554(e) of the APA constituted a "reversal" from its previous reliance on its proposed use of this mechanism to "overrule the BALCA's decision and legal conclusions in *Island Holdings*, and to reaffirm the Secretary's interpretation of the regulations, as stated in the preamble to the [2013] IFR."  2014 Notice of Intent, 79 Fed. Reg. at 75,183 (AR 72); *see* Pls.' Mot. at 21.  Plaintiffs contend that DOL's justifications for its decision not to proceed with a declaratory did not amount to "reasoned decisionmaking."  Pls.' Mot. at  21.

The 2020 Withdrawal Notice indicated that "[DOL] does not appear to have *ever* issued a Section 554(e) order, nor to have used such an order to reverse an agency action that—under Departmental regulations—constituted the "final . . . decision of the Secretary."  85 Fed. Reg. at 14,708 (AR 4724).  It further explained that "existing" DOL regulations "do not contemplate such [§ 554(e) declaratory] orders.  Indeed, DOL's regulations provide no mechanism for a Department official to review BALCA decisions regarding H-2B prevailing wage determinations."  *Id.* at 14,708–09 (AR  4724–25).

Plaintiffs argue that the agency's justification for disclaiming reliance on § 554(e) to issue a declaratory order to overrule BALCA's *Island Holdings* decision does not suffice as "reasoned" decisionmaking.  *See* Pls.' Mot. at 20–21.  However, as Defendants correctly note, the decision of

whether or not to issue a declaratory order is a procedural mechanism explicitly within the agency's discretion.  *See* § 554(e) ("The agency, with like effect as in the case of other orders, *and in its sound discretion*, *may* issue a declaratory order to terminate a controversy or remove uncertainty) (emphasis added)).  Moreover, "an agency's refusal to promulgate a new rule is subject to even more deferential review: Review in such cases is 'extremely limited and highly deferential.'"  *Id.* (quoting *Massachusetts v. EPA*, 549 U.S. 497, 527–28 (2007) (internal quotations omitted)).  In view of this deferential standard afforded to agencies to determine whether or not to issue a declaratory order, the Court concludes that DOL's explanation for declining to proceed with the order proposed by its 2014 Notice of Intent is sufficiently reasoned. In sum, DOL indicated that use of a declaratory order would be a novel method of overturning BALCA's adjudication and that such procedures were not contemplated by DOL's existing regulations.  This explanation supplies sufficient justification for declining to proceed with the proposed declaratory order contemplated in the 2014 Notice of Intent.

### 2.  Adoption of BALCA' *Island Holdings* Decision Regarding Validity of 2013 SPWDs.

Plaintiffs next argue that the 2020 Withdrawal Notice failed to demonstrate that the agency had engaged in reasoned decisionmaking in adopting BALCA's conclusion that DOL lacked authority to issue SPWDs to employers who had obtained TLCs pursuant to prevailing wage determinations set *before* the 2013 IFR.

As noted above, agencies are "free to change" their existing policy so long as they provide a "reasoned explanation for the change."  *Encino Motorcars*, 579 U.S. at 221.  Again, the agency must "display awareness that it *is* changing position" and "show that there are good reasons for the new policy."  *Fox*, 556 U.S. at 515.  And the agency must "be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'"  *Encino*

*Motorcars*, 579 U.S. at 222 (quoting *Fox*, 556 U.S. at 515).  Defendants argue that the 2020 Withdrawal Notice displayed "awareness" that the agency was changing its earlier position regarding BALCA's conclusion that the agency lacked authority to issue SPWDs to employers in similar situations as Plaintiffs' employers.  *See* Defs.' Opp'n & Cross-Mot. at 12–13.  Plaintiffs do not contest that DOL has satisfied its obligation to "display awareness that it *is* changing position." *Fox*, 556 U.S. at 515; *see* Defs.' Opp'n & Cross-Mot. at 12–13.  Plaintiffs do, however, challenge the sufficiency of Defendants' reasoning for its change in position as to the 2013 SPWDs.  Accordingly, the Court shall assess the "reasons" supplied by DOL for changing its policy with respect to the 2013 SPWDs, as well as its consideration of "reliance interests."

     **a.  DOL's Reasons for Policy Change.**

DOL's 2020 Withdrawal Notice identifies at least five reasons for changing its position with respect to the validity of 2013 SPWDs issued to employers who had previously been certified to hire H-2B workers at lower wage rates.  The Court concludes that these explanations offer sufficient reasoning supporting DOL's change in policy, and therefore DOL's 2020 Withdrawal Notice was not arbitrary or capricious.

*First*, DOL indicates that its regulations at the time the 2013 SPWDs were issued did not "contain any express provisions regarding calculating, issuing, or complying with SPWDs." 85 Fed. Reg. at 14,709 (AR 4725).  Rather, DOL points to 20 C.F.R. § 655.10(d) for the proposition that the "prevailing wage determination" made by NPC in issuing a TLC "shall apply and shall be paid the prevailing wage by the employer, *at a minimum*, for the duration of employment." § 655.10(d) (2012) (emphasis added).  BALCA's decision notes that DOL had historically interpreted this provision as clarifying "that where the duration of a job opportunity is less than one year . . . the prevailing wage determination" noted in the TLC "will be valid for the duration

of the job opportunity." *See Island Holdings*, at \*10 (AR 61) (quoting 73 Fed. Reg. 78,020, 78,029 (Dec. 19, 2008)).   In DOL's view, the 2014 Notice of Intent departed from this longstanding interpretation—relying only "on dicta" from the *CATA II* court's opinion for the proposition that nothing in this regulation *precluded* DOL from issuing certifications "conditioned on a promise to pay a new prevailing wage as soon as one became effective."  *See* 79 Fed. Reg at 75,182 (AR 71) (citing *CATA II*, 2010 WL 4823236, at \*2–3).  The 2020 Withdrawal Notice explains DOL's view that it was the 2014 Notice of Intent that represented a "departure" from DOL's "longstanding interpretation of the regulations and with its historical practice," explaining that "[b]efore 2013, DOL had *never* imposed new prevailing wage rates on employers during the course of the employment."  85 Fed. Reg. at 14,709 (AR 4725).

Plaintiffs argue that DOL's reliance on this regulation is "unreasonable" in light of the *CATA II* decision, which, as noted *supra* Section I(A), found that the phrase "at a minimum" in the same regulation set a "floor" for the prevailing wage rate.  *See* Pls.' Mot. at 27 (quoting *CATA II*, 2010 WL 4823236, at \*1).  Although acknowledging that DOL was "not bound to follow a district court's interpretation of its regulations, Plaintiffs argue that "it was required to at least address it," particularly because the *CATA II* decision was the "basis for a prior position."  *Id.* (citing 2014 Notice, 79 Fed. Reg at 57,182 (AR 71)).  DOL *did* address the *CATA II* court's decision—noting that its discussion of this regulation appeared "in dicta" in a case in which that regulation was not being challenged and contravened DOL's own "longstanding interpretation" of this regulation as requiring that the prevailing wage determination identified in the TLC applied for the duration of the H-2B worker's employment.  *See* 85 Fed. Reg. at 14,709, 14709 n.15 (AR 4725).

*Second*, DOL states in the 2020 Withdrawal Notice that BALCA correctly concluded that "neither the [2013] IFR's preamble nor the . . . [employer] attestation could have served as authority to issue the 2013 SPWDs." *Id.* at 14,709 (AR 4725) (citing *Island Holdings*, at \*11–14 (AR 62–65)); *see supra* Section I(D) (summarizing *Island Holdings* decision). The 2014 Notice of Intent relied on both the 2013 IFR preamble and the employer attestation as sources for DOL's authority to issue SPWDs to previously-certified employers. DOL explains in the 2020 Withdrawal Notice that this reliance was misplaced because a "preamble cannot impose legal obligations that contradict the regulatory text" and because DOL's regulations did not support adjusting a prevailing wage rate based only an the employer's attestation that it will pay the most recent rate that "is or *will*" be issued. 85 Fed. Reg. at 14,709 (AR 4725) (emphasis added) (citing *Nat'l Wildlife Fed. v. EPA*, 286 F.3d 554, 569–70 (D.C. Cir. 2002)). DOL explained in the 2020 Withdrawal Notice that the 2014 Notice of Intent's reliance on these sources of DOL's purported authority to issue SPWDs was "inconsistent" with "principles requiring proper notice to regulated parties of their legal obligations." *Id.* Although Plaintiffs contend that the preamble was not "inconsistent" with the 2013 IFR as to the validity of the 2013 SPWDs, they point to no other provision of the 2013 IFR supplying a legal basis for DOL to issue such revised wage determinations to previously-certified employers.

*Third*, the 2020 Withdrawal Notice explains that requiring previously-certified employers to pay the rates specified in the 2013 SPWDs was "inconsistent" with the "structure" and "primary purposes" of the H-2B labor certification program. 85 Fed. Reg. at 14,709 (AR 4725). DOL indicates that the purpose of the H-2B program is to "balance the need for temporary, seasonal foreign workers" against "the need to protect U.S. workers' jobs, wages, and working conditions." *Id.* Specifically, prevailing wage determinations "require employers to recruit U.S. workers at a

wage rate that is not artificially depressed by the importation of temporary foreign labor." *Id.*
DOL argues that H-2B employers were never required to attempt to recruit U.S. workers at the
higher wages specified in the 2013 SPWDs and so, in DOL's view, "[o]rdering employers to pay
foreign H-2B workers a higher wage than they offered to U.S. workers in recruitment is
inconsistent with the central purpose of the recruitment process." *Id.* And, requiring this result
would create a "large disparity" between "back wages that would be owed to H-2B and U.S.
workers" which "places the 2013 SPWDs in tension with the [TLC] program's predominant
concern of protecting the domestic work force from wage depression and from preferential
treatment of H-2B workers." *Id.* at 14,710 (AR 4726).

*Fourth*, the 2020 Withdrawal Notice addresses the 2014 Notice of Intent's apparent
conclusion that the "*CATA [III] court expected*" DOL to issue the SPWDs. The 2020 Withdrawal
Notice indicates that the agency's previous "speculation" about what the *CATA* court "expected"
DOL was unreasonable when the court did not explicitly order this outcome and when the *CATA
II* court had explicitly held that it lacked the authority to compel the agency to issue conditional
TLCs that may have subjected previously-certified employers to higher prevailing wage rates. *See*
85 Fed. Reg. at 14,710 (AR 4726).

And *fifth*, the 2020 Withdrawal Notice identifies certain "prudential" and "programmatic"
reasons for "accepting" BALCA's reasoning as to the invalidity of the 2013 SPWDs. *See* 85 Fed.
Reg. at 14,710 (AR 4726). Specifically, DOL explains that "leaving OFLC to individually
adjudicate each of the roughly 1,050 pending SPWD administrative appeals relating to the 2013
employment season would drain significantly DOL resources" and would "detract from the pursuit
of other priorities." *Id.* And, even if DOL did expend its resources to address the remaining SPWD
appeals, it contends that doing so would "be of little practical benefit" given "significant obstacles

that now exist to compliance and enforcement" of wage issues dating back to 2013.  *Id.*  Plaintiffs are reasonably frustrated by this reasoning as these "obstacles" are largely of DOL's making—including its lengthy stay of employers' administrative appeals, its years-long pause on determining whether or not to issue the declaratory order proposed in the 2014 Notice of Intent, and its reversal of its prior position regarding the correctness and effect of BALCA's *Island Holdings* decision.  *See* Pls.' Mot. at 30; *id.* at 31 ("[T]he delay was DOL's fault.").  Their criticism of DOL's rationale, however, is that it does not supply a sufficient "legal" basis to invalidate the 2013 SPWDs.  *Id.*  Notwithstanding these issues, agencies have "broad discretion to choose how best to marshal [their] limited resources and personnel to carry out [their] delegated responsibilities."  *Massachusetts*, 549 U.S. at 527.

Plaintiffs contend that these five justifications for DOL's conclusion that the 2013 SPWDs were invalid (adopted, in large part, from BALCA's reasoning in *Island Holdings*) did not amount to "reasoned decisionmaking."  However, DOL's 2020 Withdrawal Notice addresses the "facts and circumstances" underlying in 2014 Notice of Intent and offers a reasoned explanation as to why it now views its earlier conclusions as legally incorrect and BALCA's analysis as correct.  *See Fox*, 556 U.S. at 515–16.  This is not a case in which the agency has provided "no explanation for the change" or "completely ignore[d] its previous findings."  *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1284 (D.C. Cir. 2019).  Rather, DOL has sufficiently explained its new position that the 2013 SPWDs were unsupported by DOL regulations and the 2013 IFR, contrary to the purpose of the H-2B program, and not required by the *CATA III* litigation.  DOL's discussion of these reasons in the 2020 Withdrawal Notice is sufficient to demonstrate that the agency engaged in reasoned decisionmaking when it changed its earlier position regarding the validity of the 2013 SPWDs issued to employers certified before the 2013 IFR.  DOL has satisfied its burden

of demonstrating that there are "good reasons" for this position and that the agency "*believes* [its new position] to be better," as the APA requires.  *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915 (2020).

**b.  DOL's Consideration of Reliance Interests.**

As previously noted, an agency changing policies must "assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns."  *Regents*, 140 S. Ct. at 1915.  Even if the agency considers the any "reliance interests" to be "serious," it my nonetheless determine that "other interests and policy concerns outweigh any reliance interests."  *Id.* at 1914.  "Making that difficult decision [is] the agency's job[.]"  *Id.*

Plaintiffs argue that DOL's discussion failed to demonstrate that it considered "serious reliance interests."  Pls.' Mot. at 32.  However, the 2020 Withdrawal Notice *does* address reliance interests of H-2B workers, as well as their employers.  It recognizes that the 2013 SPWDs gave H-2B workers an "initial expectancy" of "increased wages or back pay."  85 Fed. Reg at 14,711 (AR 4727). However, it noted that those SPWDs that were "properly challenged" (including Plaintiffs' employers) never "became final."  *Id.*  It further balances the employees' reliance interests against those of the employers who received post-certification SPWDs, noting that they "relied on the original PWDs before recruitment and hiring," "had already paid the costs of recruiting workers, and would have had limited options for responding to the SPWDs' increased costs."  *Id.*  Although Plaintiffs may disagree with the outcome of DOL's balancing of different reliance interests, DOL's discussion of these interests was sufficient to satisfy its obligation under the APA to engage in reasoned decisionmaking.

**C. DOL's Vacatur of 2013 SPWDs Issued to Plaintiffs' Employers Was Not Arbitrary and Capricious.**

Plaintiffs' argument that the letters issued to their employers vacating the 2013 hinges on their contention that the 2020 Withdrawal Notice was arbitrary and capricious. However, because the Court has concluded that the 2020 Withdrawal Notice adequately displayed DOL's awareness of its changed position, discussed good reasons for the "new policy" and considered competing reliance interests, the Court also concludes that the letters issued to individual employers—which vacated the 2013 SPWDs— were not arbitrary and capricious.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' [44] Renewed Motion for Summary Judgment and **GRANTS** Defendants' [50] Cross-Motion for Summary Judgment. An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

**Date:** September 23, 2022